Michael P. O'Bresly SBN 165512
LAW OFFICE OF MICHAEL P. O'BRESLY
1300 Clay Street, 11th Floor
Oakland, California 94612
Tel: (510) 350-8332
Fax: (510) 255-2600

Attorney for Plaintiff
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>  Plaintiff,<br><br>vs.<br><br>INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, DOES 1 TO 20,<br><br>  Defendants. | Case No.: C 07 2721 PJH<br><br>**REGENTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO TRANSFER VENUE**<br><br>Hearing Date: July 25, 2007<br>Time:         9:00 a.m.<br>Courtroom:    3<br><br>Assigned to the Honorable Phyllis J. Hamilton |

**I.   INTRODUCTION AND STATEMENT OF FACTS**

This matter involves a claim for insurance benefits brought by the Regents of the University of California ("Regents"), a constitutional corporation of the State of California, against Indemnity Insurance Company of North America ("Indemnity"), a Pennsylvania corporation.

The action stems from damage to the construction of real estate improvements to the Regents' Irvine California campus. To protect itself from the risk of physical loss or damage to its improvements while under construction, in or about 2001 Regents had purchased from Indemnity a form of first-party property insurance known as a Master Builders' Risk policy. By the terms of the policy, Indemnity undertook to indemnify and compensate Regents for damages and loss to its "construction works" caused by any peril, except as excluded. The policy was purchased by the Regents' Office of Risk Services, which is located in Oakland, through the AON Insurance brokerage office located in San Francisco. The policy in question was intended to cover all of the Regents' construction projects initiated before September 1, 2004, at any of the campuses in the University of California system. (See accompanying Declaration of Gary Leonard.) On or about July 22, 2004, AON San Francisco processed an endorsement to add the Irvine "Southern Radial Road" construction project as a risk covered by the Regents' Master Builder's Risk policy.

In December and January of 2004/05, the Irvine campus suffered a series of heavy rain storms. The rain caused significant erosion, saturation, and other damage to unfinished road beds contained within the Southern Radial Road project, which at the time was in the final stages of being graded and prepared for

paving. The rain necessitated re-grading, re-compaction and other repairs to the road, costing the Regents a significant amount of money.

On April 27, 2005, AON presented an insurance claim to Indemnity for reimbursement of these repair costs. On August 18, 2005, John Adair, a general adjustor for "ACE – Westchester Specialty Group", issued a letter denying the claim based on the Indemnity's interpretation of the language of an exclusion in the Builders' Risk policy.[1] Mr. Adair's business address on the letter was identified as Roswell, Georgia. (See accompanying Declaration of Gary Leonard.)

After further exchange of correspondence, Indemnity hired Messrs. McCarty and Bell of AMEC Earth & Environmental to copy and review about one box of documents, which were provided to them by personnel at the Irvine campus. (See Exs. A & B to accompanying Declaration of Michael O'Bresly) Following this review, on or about January 31, 2007, Michael Phillips, Indemnity's counsel, issued another letter in which Indemnity again stood by its decision to deny the claim.

---

[1] Plaintiff believes that defendant Indemnity is a wholly owned subsidiary, of unknown tier, of ACE Ltd., which is a Bermuda-based insurance group. ACE – Westchester is apparently an ACE-owned company affiliated with Indemnity. At present, plaintiff does not believe that this is a material issue.

Regents initially filed this action in the Superior Court of the State of California in and for the County of Alameda.  Indemnity removed the matter to this court, on the basis of alleged diversity jurisdiction.  This motion followed.

II.   **ARGUMENT**

Indemnity seeks to transfer venue of this action to the Central District of California, Southern District, purportedly for the convenience of the parties and seven percipient witnesses identified by Indemnity's counsel in his supporting declaration.  In its cursory moving papers, Indemnity cites no legal authority in support of transfer, other than the provisions of the venue transfer statute.

"Convenience" transfers are authorized by 28 U.S.C. §1404(a), which permits venue transfers "[f]or the convenience of parties, witnesses and in the interest of justice . . . ."  The section permits the Court in its discretion to transfer a pending action to "any other district or division where it might have been brought." 28 U.S.C. §1404(a).  The court must balance three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  *A. J. Industries v. United States District Court, Central District of California*, 503 F. 2d 384, 386-87 (9th Cir. 1974).  Section 1404(a) permits consideration of "individualized, case-by-case considerations of convenience and fairness," including consideration of the location where relevant agreements were negotiated and executed, and the ease of access to sources of proof.  *Jones v. GNC*

*Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000), *citing Stewart Org. Inc. v. Ricoh Corp.*, 487 U. S. 22, 29 (1988).

The United States Supreme court has however made absolutely clear that the venue transfer provisions of Section 1404(a) are not meant to merely shift the inconvenience of litigation from one party to the other. *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964), *cited in Ellis v. Costco Wholesale Corp.* 372 F. Supp. 3d 530, 540 (N D Cal. 2005). Indeed, the Ninth Circuit has consistently affirmed that a plaintiff's choice of forum should be afforded substantial weight, and transfer should generally not be granted unless the "convenience" and "justice" factors *strongly* favor venue elsewhere. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1985); *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985).

The Regents disputes that transfer is appropriate, as defendant fails to show that considerations of convenience and justice "strongly" favor a transfer of venue to Los Angeles or Orange County.

### A. Convenience of the Parties

Defendant is a large corporation underwriting insurance risks throughout the country, with its principle place of business in Pennsylvania. Indemnity's claims adjustor who is the decision maker on this claim, Mr. Adair, is resident in Georgia. Indemnity has chosen not to argue that litigating in the Northern District would

represent any greater or less inconvenience to it as a party than would litigating in the Southern District.  Indeed, it could not.  To the extent that its personnel must travel from Pennsylvania or Georgia, Indemnity can make no credible argument that the Southern California district is more convenient than the Northern.  Moreover, where the defendant is a large national corporation, the contention that it would suffer monetary expense and difficulty litigating in a distant forum is often not persuasive.  *See Miracle v. NYP Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Hawaii 2000).

It is true that Indemnity's chosen counsel is resident in Los Angeles.  However, convenience of counsel is *not* a recognized factor in evaluation of convenience transfer requests.  *See Soloman v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1047 (3rd Cir. 1973); *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003).

### B. Convenience of the Witnesses

Indemnity focuses its arguments on the alleged inconvenience to seven persons which it contends are relevant and material witnesses to this action.  However, immediately it should be noted that four of the seven witnesses identified in Mr. Phillips' declaration are <u>employees of the Regents</u>.  Plaintiff can be presumed to have taken into account the possibility of the need for its own employees to travel to northern California when it filed the present lawsuit in

Alameda County. To the extent that Indemnity intends or to subpoena these persons for trial, they are amenable to process in this district. *See, e.g., Ashmore v. Northest Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 38 (D. Maine 1996) (location of party employees are typically not a persuasive factor because their attendance at trial may be compelled).

Defendant also fails to acknowledge that each of the three remaining witnesses – Messrs. Bell, McCarty, and Henderson -- are paid consultants or independent claims agents hired by defendant Indemnity. In other words, these are not non-affiliated witnesses. The "convenience" of paid expert witnesses, such as the two geologists McCarty and Bell, is not a persuasive factor. *Promuto v. Waste Management Inc.* 44 F. Supp. 2d 628, 633-40 (S.D.N.Y. 1999).

Additionally, Indemnity's vague description of all of these witness' role in the proceedings – such as, "will testify regarding . . . information provided to the insurance adjustor," "will testify regarding the denial of the claim," or "will testify regarding the investigation of the construction project and causation of damages" – is insufficient for the court to evaluate the relative importance of these persons as witnesses and determine whether they are in fact necessary or simply "make weight" for purposes of the motion. *See Brandon Apparel Group, Inc. v. Quitman Manufacturing Co.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999). For instance, it is not clear to Regents what relevant and material issue is to be proven by having Mr.

1  Henderson and the Regents' employees come to court to testify regarding "the
2  denial of the claim" or "information provided to the insurance adjustor."  The
3  primary issue is whether the loss is excluded under the policy, and Mr.
4  Henderson's opinions or views on that subject would at this point seem to be of
5  little importance, if at all.  Mr. Henderson was not involved in the negotiation,
6  underwriting or brokering of this policy and its wordings.

   In that same regard, Indemnity fails to apprise the court of potential
witnesses who are located in northern California.  For example, employees of
AON may be relevant to the issue of the interpretation of the terms of the exclusion
upon which Indemnity relied to deny this claim.  *See, e.g., London Market Insurers
v. Superior Court*, 146 Cal. App. 4th 648, 656 (2007) ("In determining if a
provision is ambiguous, we consider not only the face of the contract but also any
extrinsic evidence that supports a reasonable interpretation."); Cal. Civil Code
Section 1647 ("A contract may be explained by the circumstances under which it
was made ….").  The Regents notes that neither party has made its FRCP 26
disclosures, and the Regents has not determined that any lay witnesses will be
called to testify on policy interpretation issues.  However, to the extent that there
are any witnesses, affiliated or not, or existent documents pertaining to the
negotiation of this policy and discussions concerning the coverage to be afforded
by it, those witnesses and documents are not present in the Southern District of

California. The insurance policy at issue was brokered through AON insurance brokerage, through persons located its San Francisco office, and purchased by persons in the Regents' Office of Risk Services, located in Oakland. (See accompanying Declaration of Gary Leonard.)

### C. Other Factors Affecting the Interests of Justice

Defendant does not make a persuasive showing that it will have difficulty in accessing proof or evidence for its defense in this claim if venue remains here. Mr. Phillips' hollow declaration statement that he "believes" that "most of the documentary evidence" related to this claim is located in the southern district only serves to underscore the lack of merit to this motion.

The Regents has previously supplied Indemnity and its consultants with documents, which were the construction and loss-related documents that Indemnity asked to look at in the course of their investigations. In addition, the Regents allowed them to make copies of those documents, which were not overly voluminous. (See Exs. A and B to accompanying declaration of Michael P. O'Bresly.) Thus, the documents to which Mr. Phillips is apparently referring are either already in Indemnity's consultants' possession or in the possession of the Regents. To the extent that there is need for any additional documents, there is no showing that they cannot be reached through normal and customary modes of discovery, subpoena, or other process.

### III. CONCLUSION

Indemnity has failed to present evidence of any cognizable inconvenience or injustice if this action proceeds in Northern California. Moreover, moving defendant – a Pennsylvania corporation with its principal place of business in Philadelphia – has not argued that, as party defendant, it would be inconvenienced if it is required to litigate in northern California as opposed to southern California. In short, defendant has failed to make the necessary showing of prejudice to parties, witnesses, or the interests of justice to overcome the presumption that the plaintiff should be permitted to select the forum. Venue is proper in the Northern District and should remain here. Accordingly, Regents requests that the Court DENY Indemnity's motion to transfer venue.

DATED:   July 5, 2007                                Respectfully Submitted,


/S/ *Michael P. O'Bresly*
_____
Michael P. O'Bresly
Counsel for Plaintiff
 THE REGENTS OF THE
 UNIVERSITY OF CALIFORNIA